Timothy STERNER, Appellant,

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

March 29, 1977.

Certiorari Denied by Supreme Court
June 20, 1977.

Michael E. Clift, Shelbyville, for appellant.

Brooks McLemore, Atty. Gen., William O. Kelly, Asst. Atty. Gen., Nashville, Charles S. Ramsey, Jr., Dist. Atty. Gen., Manchester, for appellee.

## OPINION

GALBREATH, Judge.

The jury had before it credible proof, which it believed, that the appellant, Timothy Sterner, was in guilty possession of two mules recently stolen from a livestock dealer in Pennsylvania which he attempted to sell to Mr. Douglas Reed, a Manchester dealer, on the 2nd day of February, 1975. Mr. Reed testified that when he evinced no interest in buying two "high priced" mules from the defendant, Sterner drove away in a closed van, presumably containing the mules, to contact Danny Reed, the witness' son, who was attending a livestock sale in Lebanon. The younger Reed testified that Sterner approached him at the sale and asked him to sell the mules. Danny Reed, although he stated there was no discussion on the point, had the impression that the defendant would come back after the mules were sold for the anticipated price of $1,500 the mules were valued at by Sterner. The sale was thwarted by the appearance of the owner of the mules who recognized and claimed them. The defendant never contacted Reed after the mules were returned to their owner.

The above detailed facts support the jury's verdict that the defendant feloniously concealed stolen property of a value in excess of $100 for which they imposed punishment at from three to eight years in the penitentiary. The defendant gave an explanation for his possession of the mules, which if believed, would have exonerated him from criminal complicity. However, as aforesaid, and for reasons we will discuss hereinafter, the jury did not accept his ex-

planation. Our Supreme Court has consistently held:

"(T)he unexplained exclusive possession of stolen property shortly after commission of the robbery may warrant a finding that the possessor has guilty knowledge of the larceny or robbery. And unless this exclusive possession of stolen property after larceny or robbery is accounted for in a straightforward, truthful way, and unless the jury finds the explanation reasonable and satisfactory, the jury would be warranted in returning a verdict of guilty of receiving and concealing stolen property." *Tackett v. State,* 223 Tenn. 176, 443 S.W.2d 450 (1969)

The defendant, by way of explanation for his possession, testified that he transported the mules to Tennessee as an accommodation for others. He said he was coming to the Bedford County farm of one George Livingston to pick up two horses owned by his father, and since his van was empty, he agreed to pick up mules he was told were owned by a Mr. Ray Taylor from the Maryland Farm of a Mr. Radie Evans and deliver them to Danny Reed. Taylor, a former resident of Coffee County who was serving a sentence in a federal prison for interstate transportation of stolen goods, was called as a rebuttal witness and denied any knowledge of the mules. This sharply disputed the defendant's theory based in large measure on the testimony of Radie Evans who had testified that Taylor had left the animals at his farm and arranged for the defendant to bring them to Tennessee. If Radie Evans was truthful, then the defendant was, in all probability, innocent. Thus, the weight the jury gave his testimony was a key factor in their determination. For this reason we are forced to hold that a plain error committed in attacking the credibility of this witness forces reversal.

Evans was asked by the assistant district attorney general, for the purpose of impeachment, if he had been charged with perjury in Rockwood, Maryland some twenty-two years before in August of 1954. In overruling the prompt objection to this question, the trial judge ruled specifically that witnesses may be asked about such accusations, saying "(A)s pertains to a witness, accusations are admissible, so he [the assistant district attorney general] has a right to ask him about these particular aspects . . . This man is not a defendant and this would be material."

Aside from the obvious remoteness of the unsupported charge of criminal conduct we can find no support for the judge's differentiation between the methods permissible for impeachment of a defendant's testimony vis a vis that of a material witness. Although never directly spelled out, in Tennessee the general law would seem to be as stated in Wharton's *Criminal Evidence*, 13th Edition, § 477:

"It may not be shown, for the purpose of impeachment, that a witness has been arrested for or charged with the commission of a crime. Such evidence is excluded on the theory that a witness is presumed to be innocent, or that the evidence would constitute hearsay."

The jury had some difficulty with this case. The facts were close and the conclusion rested entirely on whether or not the jury believed the defendant and his corroborating witnesses, or the Reed boy and his father and the witnesses who tended to corroborate them. The defendant theorized that the Reeds were implicated with Taylor in the theft of the mules. Branding the key witness for the defense as an accused perjurer may well have tipped the scales and brought about a conviction.

We also do not approve of other trial procedures which we feel sure will not be repeated in the event of retrial. While no reversible error was involved in a witness for the State discussing with another witness just prior to his testimony the general contents of a statement the latter witness had previously given, it would be better if such discussions were discouraged. In addition, it would be best not to emphasize the testimony of one particular witness by replaying his testimony at the request of the jury, as was done in this case, over objection on behalf of the defendant. As

was noted by the Sixth Circuit Court of Appeals in *Henry v. United States,* 204 F.2d 817 (1953):

> "After a jury has reported its inability to agree upon a verdict, it is, in our opinion, incumbent upon the Trial Judge to exercise extreme care in reopening the case for the introduction of further testimony or in permitting any evidence to be restated or reread to the jurors. Unless restraint is exercised by the Judge, it may well be that he would permit undue emphasis to be placed upon portions of the testimony if such portions were called for by the jurors."

Reversed and remanded.

RUSSELL and DAUGHTREY, JJ., concur.